Filed 8/20/25  P. v. Ramirez CA2/2

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>JOSE TRINIDAD RAMIREZ,<br><br>　　Defendant and Appellant. | B332035<br><br>(Los Angeles County<br>Super. Ct. No. NA093863) |

APPEAL from an order of the Superior Court of Los Angeles County, Richard M. Goul, Judge.  Affirmed.

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

Jose Trinidad Ramirez (defendant) appeals from a postjudgment order denying his petition for resentencing under Penal Code section 1172.6 after the trial court held an evidentiary hearing and determined there was evidence beyond a reasonable doubt that defendant aided and abetted murder with intent to kill.[1]  Defendant contends reversal is required because the trial court denied his request for a continuance, made for the first time orally on the day of the evidentiary hearing, to substitute appointed counsel with private counsel.  We find no error and affirm the order.

## STATEMENT OF THE CASE

In July 2015, a jury convicted defendant of first degree murder in violation of section 187, subdivision (a), with true findings the crime was gang related (§ 186.22, subd. (b)(1)(C)), and a principal (codefendant and defendant's brother John Ramirez) personally and intentionally discharged a firearm causing death to the victim (§ 12022.53, subds. (d) & (e)(1)).[2]  Defendant was sentenced to 25 years to life for murder and a consecutive firearm enhancement of 25 years to life.  The court stayed the remaining firearm enhancements.  Defendant appealed, and we affirmed the judgment in *People v. Ramirez* (Nov. 9, 2018, B280623) (nonpub. opn.), but remanded to the trial court to give that court an opportunity to exercise its discretion under section 12022.53, subdivision (h) to strike or dismiss the

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     We will refer to defendant's brother John Ramirez and his father Miguel Ramirez by their first names to avoid confusion.

2

firearm enhancement. In 2019, the California Supreme Court denied defendant's petition for review in case No. S252899.

In June 2019, defendant filed a petition for resentencing pursuant to former section 1170.95 (hereafter section 1172.6), which the superior court denied at the prima facie stage after considering trial evidence that defendant directly aided and abetted a first degree murder with intent to kill. (*People v. Ramirez* (Mar. 3, 2022, B309519) [nonpub. opn.] (*Ramirez*).)

In 2021, after hearing arguments of counsel, the trial court exercised its discretion to reimpose the firearm enhancement. (*Ramirez, supra*, B309519.) Defendant filed appeals from both orders, and the cases were consolidated. (*Ibid.*) In 2022, this court affirmed the trial court's imposition of the firearm enhancement, but reversed the denial of the section 1172.6 petition because the trial court had engaged in factfinding at the prima facie stage, and it remained possible, as a matter of law, that defendant was convicted of murder without the intent to kill under theories of conspiracy or as an aider and abettor under the theory of natural and probable consequences. (*Ramirez, supra*, B309519.) This court remanded the matter to the superior court to issue an order to show cause and to hold an evidentiary hearing. (*Ibid.*)

On remand, in June 2022, Attorney Carol Ojo was appointed to represent defendant. There is a conflict between the parties as to whether the parties submitted papers in February 2023. The papers are not in the record, although the trial court stated the parties filed briefs in February 2023.[3] Appointed

---

[3]  The clerk's transcript contains no filings by Attorney Ojo. On December 13, 2023, appellate counsel submitted a letter to the superior court pursuant to rule 8.340(b) of the California

counsel represented defendant at status conferences held on February 9, 2023, and April 11, 2023. Defendant was not present in court for the April 11, 2023 status conference. However, Ojo informed the court defendant wanted to be present for the evidentiary hearing.

At the June 15, 2023 evidentiary hearing, the trial court denied as untimely defendant's oral request to replace appointed counsel with retained counsel. Neither party submitted new evidence. The court reviewed the record of the 2015 trial and heard the parties' arguments, then found defendant, beyond a reasonable doubt, was guilty of murder "as an aider and abettor [who] possessed the intent to kill." The petition was denied.

On July 3, 2023, defendant filed a timely notice of appeal.

---

Rules of Court seeking any prosecution or defense briefs filed in February or March 2023. The clerk's office responded on December 29, 2023, stating that such briefs were not located after a thorough search and that such briefs were not mentioned in the June 15, 2023 minute order. There is also no mention of any such briefs in the minutes for the February and April 2023 status conferences. However, at the evidentiary hearing, the trial court stated: "Ms. Ojo has thoroughly briefed this case and argued this case and submitted documents on this case." The court later specified, "The motions were . . . submitted months ago back in February." Defendant arguably acknowledged the existence of a motion by stating in court, "I don't even know why she even submitted a motion."

## FACTUAL BACKGROUND UNDERLYING THE 2015 CONVICTION[4]

Shortly after midnight on April 20, 2012, defendant, his father Miguel and others were drinking at a bar they frequented. Defendant argued with the victim, Martin Contreras, mentioning the Westside Longo gang several times and telling Contreras and his companions they were in his neighborhood, and they should show respect. When Contreras and his three friends (Julio V., Orlando M., and Christian L.) left the bar, defendant followed them out and began to fight with Contreras. Miguel came outside and saw defendant and Contreras struggling on the ground. Miguel hit or kicked Contreras, who then hit Miguel, causing him to fall to the ground and lose consciousness. A security guard dispersed the group by pepper spraying the air around them.

Contreras and his friends left and met up a short time later in front of Contreras's house, just before defendant arrived and parked his white truck behind the friends' car. Defendant got out of the truck holding a steel pipe about the size of a baseball bat. He told Julio not to move and said such things as, "You mother fuckers, you're going to pay; this is not going to end like this." Defendant's brother John arrived in a black Dodge Ram pickup truck, which he parked behind defendant's truck. Orlando, who later identified John as "Johnny," ran off when he saw John emerge from his truck. Orlando heard a gunshot when he was about 40 feet away from the scene. Julio remained in the driver's seat of his car while being threatened by defendant. He also

---

[4]     This factual summary is taken from the prior opinion in *Ramirez, supra*, B309519.

heard a gunshot from close behind him. When Julio could no longer see Contreras, he drove away.

Erika, the mother of Contreras's children, was inside the house when she woke up at around 1:16 a.m. to the sounds of people arguing and a gunshot. When Contreras came inside bleeding from his waist, Erika called 911 and was directed to ask Contreras who had shot him. Erika told the 911 operator that he named "Johnny." Later, as he lay wounded on the couch, Contreras told a police officer that "Johnny Ramirez," shot him and left in a black Dodge Ram pickup truck. Erika did not know John but knew defendant. Defendant's cell phone records for the night of the shooting showed calls to John's phone at 12:56 a.m., 12:57 a.m., 12:58 a.m., and 1:14 a.m., and one call from John at 1:01 a.m., all answered. The location of the cell tower used for the calls was consistent with both phones being at the scene of the shooting at the time of the shooting.

When defendant and John's cousin told John later that afternoon that Contreras had been so gravely injured that he was going to die, John replied the shot was not enough for him to die. Contreras died about 20 hours after the shooting. An autopsy determined that a large caliber bullet entered Contreras's body from behind, consistent with an attempt by Contreras to turn away upon seeing a gun. The fatal bullet damaged an artery and two veins.

Sometime after the night of the shooting Julio, Christian, and another friend were parked at a liquor store when defendant drove up, blocked their car, and told them that what happened to Contreras was nothing compared to what would happen to them if they said anything. John then arrived in another car and said this was his "hood," to remain quiet about what had happened, and all would be fine.

6

After defendant was arrested he was placed in a cell with an informant. Their conversations were recorded. Among other things, defendant told the informant that his brother was a "rider," and defendant had telephoned his brother "to have this fool hit" and to tell him "this fool needs to go down" and "be gone." Defendant indicated his brother was the shooter, but then said it was someone else. Defendant said the gun used was a revolver, which had been disposed of by his brother. The gun was never found.

Gang expert Detective Chris Zamora opined in response to a hypothetical question mirroring the facts in evidence that in his opinion the hypothetical crime was committed for the benefit of and in association with the Westside Longo criminal street gang. Detective Zamora was familiar with John and defendant and was of the opinion they were both members of the Westside Longo gang. He testified that "rider" meant an active gang member who would put in work for the gang. The defense presented the testimony of Martin Flores, a gang expert who opined that rather than showing a gang-related crime, the facts indicated a family dispute and a shooting to benefit the family name, not a gang. He also noted it was common for jail inmates to lie or exaggerate the reasons for their arrest and incarceration, but he did not discern bragging in defendant's conversations. Flores also testified that "rider" can have many meanings, including the more benign meaning of "buddy."

## DISCUSSION

Defendant argues he was denied his right to retained counsel, was denied legal representation, and should have been granted a continuance at the June 15, 2023 evidentiary hearing.

7

## I.     The June 15, 2023 evidentiary hearing

In 2019, defendant filed his section 1172.6 petition through retained counsel, James M. Crawford, who also filed a reply to the People's opposition to the petition.  The superior court denied the petition, but this court reversed and remanded for an evidentiary hearing.  The remittitur issued on May 12, 2022.  On June 20, 2022, Carol Ojo was appointed to represent defendant.

About two months before the June 15, 2023 evidentiary hearing, Ojo met with defendant.  Defendant told her, "Look, I got counsel coming.  She's going to replace you.  Do not submit anything in court."

On February 9, 2023, Ojo appeared as appointed counsel for defendant and, according to the trial court, filed at least one motion related to the evidentiary hearing.[5]  Ojo requested, and the court agreed, to hold the next status conference on April 11, 2023.  At the April 11, 2023 status conference, the court set the evidentiary hearing for June 15, 2023, and granted defendant's request, made through Ojo, to be present at the evidentiary hearing.

At the outset of the evidentiary hearing through Ojo, defendant requested the court permit an unspecified private counsel substitute in and handle the case.  The request was denied.  The following colloquy occurred at the hearing:

"Ms. Ojo:  Your Honor, Mr. Ramirez indicated to me that he would like to have private counsel handle his case.

"The Court:  The court finds that request untimely.  This has been in this court for a number of years now and Ms. Ojo has thoroughly briefed this case and argued this case and submitted documents on this case.  The court denies any appointment of

---

[5]     As set forth above, no such motion is in the record.

8

counsel at this stage of the proceedings. He has been appointed counsel and he has adequate counsel, so the request is denied as untimely.

"Ms. Ojo: Your Honor, [defendant] is indicating that he would still like to have private counsel address this.

"The Court: That is denied.

"[Defendant]: What was the reason for why?

"The Court: It's untimely.

"[Defendant]: You guys had me sitting over there in prison for almost a year.

"The Court: No. The court has made its ruling. [¶] . . . [¶]

"[Defendant]: Your Honor, I don't agree with that because she hasn't even talked to me about anything about the case. Nothing at all. She has not talked to me anything about the case, what was going to be done. [¶] I been told her, I came last time, I have a letter right here when she was—I was going to come down June 20th. I have a letter in my pocket.

"The Court: Mr. Ramirez, the court's made its ruling . . . . [¶] . . . [¶]

"Ms. Ojo: Your Honor, I did try to speak to Mr. Ramirez. He indicated to me that he would prefer to have private counsel. I did indicate to him that I would not do anything else on the case because he wanted private counsel and so that is where we are.

"[Defendant]: We haven't done anything.

"The Court: Ms. Ojo has submitted the motions and the court—

"[Defendant]: We haven't done any type of research, anything that—

"The Court: Mr. Ramirez—

"[Defendant]: She has not talked to me.

9

"The Court:  Mr. Ramirez, not now.  The court's made its ruling on the issue of representation."

The court and the prosecutor discussed the trial record and the court's finding was defendant remained liable for murder as a direct aider and abettor.  Just as Ojo began to argue, defendant interrupted.

"Ms. Ojo:  Your Honor, may I be heard just briefly?

"The Court:  Yes.

"Ms. Ojo:  Your Honor, the court needs to be satisfied that he acted with reckless disregard for human life.

"[Defendant]:  Your Honor, she had never spoke to me about anything, Your Honor.  I don't even know why she even submitted a motion.  I got here in court last—two months ago.  I told her, look, I got counsel coming in.  I got a letter right here coming from her that you guys wouldn't bring me down until June 20th.  I have the letter right here.  Okay?  [¶]  And I told her, look, I got counsel coming.  She's going to replace you.  Do not submit anything in court.  I don't even know why she would submit anything.

"The Court:  The motions were actually submitted months ago back in February.

"[Defendant]:  Okay.  Back—Okay.  She never—I have never talked to her.  I think she took my case back in June, June 20th of 2022.  I didn't hear from her until barely last year at the beginning of the year.  That's when I told her, look—and she said I'm going to bring you down for June 20th of this year.  And I told her do not submit anything without me.  Okay?  When I talked to her, she said she only had the transcripts.

"The Court:  This was completely briefed previously by a previous private lawyer, James Crawford, back in 2019.  This has

been briefed completely.  The court has read and considered everything.

"[Defendant]:  Yes, but I could bring you new evidence.

"The Court:  You were found guilty of murder under a still viable theory of homicide.  [¶]  We are done today.  Thank you.

"[Defendant]:  I can bring you new evidence.  You're not giving me a chance to bring you new evidence.

"Ms. Ojo:  Your Honor, I will file a notice of appeal."

## II.    Applicable law

In 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her criminal culpability.  (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843, superseded by statute on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.)  It amended section 188 by adding a requirement that, except as stated in section 189, subdivision (e), all principals to murder must act with express or implied malice to be convicted of that crime.  (§ 188, subd. (a)(3).)  It amended section 189 by adding a requirement to the felony-murder theory that defendants who were not the actual killer or a direct aider and abettor to the felony with intent to kill must have been a major participant in the underlying felony and acted with reckless indifference to human life.  (§ 189, subd. (e).)

Senate Bill 1437 also created former section 1170.95, currently codified as section 1172.6, which, in relevant part, established a procedure for defendants already convicted of murder under the old law to seek resentencing in the trial court if they believe they could not be convicted of that crime given the amendments to sections 188 and 189.  (Stats. 2018, ch. 1015, § 4.)

11

At the prima facie stage of the petition process, the court may not engage in factfinding about a defendant's culpability, but should deny the petition if it is meritless as a matter of law. (*People v. Lewis* (2021) 11 Cal.5th 952, 971–972 (*Lewis*).)

If the defendant makes a prima facie case for relief under section 1172.6, the court must issue an order to show cause why relief should not be granted. (§ 1172.6, subd. (c).) The People may either concede that relief should be granted or participate in an evidentiary hearing where they have the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under sections 188 or 189 as amended by Senate Bill 1437. (§ 1172.6, subd. (d)(3).)

"A petition under former section 1170.95 is not a criminal prosecution." (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 588 (*Mitchell*).) "It is the *opposite* of a criminal prosecution." (*Ibid.*) "Many constitutional protections that characterize burdensome criminal prosecutions thus do not apply in this ameliorative process." (*Ibid.*, quoting *People v. James* (2021) 63 Cal.App.5th 604, 610 ["we agree with the many courts that have held that a convicted person litigating a section 1170.95 petition does not enjoy the rights that the Sixth Amendment guarantees to criminal defendants who have not yet suffered a final conviction"]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 ["the Legislature's changes constituted an act of lenity that does not implicate defendants' Sixth Amendment rights"].) "Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee [of counsel] is generally not implicated." (*United States v. Cronic* (1984) 466 U.S. 648, 658.)

Defendants seeking resentencing have a "purely statutory right to counsel that attaches before the issuance of an order to

12

show cause." (*Lewis, supra*, 11 Cal.5th at p. 973.) Defendants also have a due process right to counsel during a resentencing proceeding where the defendant's petition states a prima facie case for relief. (*Ibid.*; *People v. Rouse* (2016) 245 Cal.App.4th 292, 300 (*Rouse*).)

## III. The trial court did not abuse its discretion in denying defendant's request for a continuance

Defendant argues that although he did not expressly request a continuance to allow him to retain counsel, he fairly apprised the court that he needed one. (See *People v. Scott* (1978) 21 Cal.3d 284, 290.)[6] A defendant's request for a continuance to seek private counsel is reviewed for abuse of discretion. (*People v. Samayoa* (1997) 15 Cal.4th 795, 840; *People v. Pigage* (2003) 112 Cal.App.4th 1359, 1368.) A "'"trial court has broad discretion to determine whether good cause exists to grant a continuance."'" (*People v. Alexander* (2010) 49 Cal.4th 846, 934.)

"'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case.'" (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.) "'"[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'"'" (*People v. Delgadillo* (2022) 14 Cal.5th 216, 228 (*Delgadillo*).) In evaluating what due process requires in a given situation, we consider "'(1) the private interests at stake; (2) the state's interests involved; and (3) the

---

[6] Defendant implies he had already retained counsel at the time of the evidentiary hearing on June 15, 2023. Nothing in the record confirms defendant had already retained private counsel at that time.

risk that the absence of the procedures in question will lead to an erroneous resolution of the appeal.'" (*Ibid.*).

Defendant had a liberty interest at stake in the section 1172.6 proceedings. (*Delgadillo, supra*, 14 Cal.5th at p. 229.) "The potential for relief under section 1172.6 from a prior murder, attempted murder, or manslaughter conviction is a 'significant' interest." (*Ibid.*)

However, appointed counsel are generally presumed to be effective and act in the best interests of the client. (*People v. Johnson* (1980) 26 Cal.3d 557, 566.) In addition, trial courts have an interest in the efficient administration of section 1172.6 evidentiary hearings, which can require expenditure of significant resources and considerable preparation by the parties. Finally, there is no reason to believe that requiring a defendant to rely on appointed counsel will lead to an erroneous resolution of the case. (*People v. Marsden* (1970) 2 Cal.3d 118, 123 [defendant may not request to replace appointed attorney unless the record clearly shows the first appointed counsel is not adequately representing the accused].)

Balancing these considerations, under the circumstances of this case, we find no abuse of the trial court's discretion in denying defendant a continuance to work with private counsel. Despite having informed Ojo two months prior that he intended to retain private counsel, on the day of the hearing defendant did not indicate he had already retained counsel or that any such counsel had spent time preparing his defense. Nor did any private counsel appear. While defendant made a general reference to new evidence, he did not specify the new evidence, nor did any private counsel submit any such evidence in advance of the hearing. Instead the court relied on "the transcripts, the jury instructions, the disk submitted by the People, the court

14

record, the appellate decisions related to this case." The court found it was "far beyond a reasonable doubt" that defendant was convicted of first degree murder "under a still viable theory of the law."

Defendant argues he had a substantial, legitimate reason for a short continuance. Defendant insists he had retained counsel, but appointed counsel gave him the wrong date for the hearing. If given a short continuance, he could have been represented by his counsel of choice and permitted to introduce new evidence at the hearing.

Preliminarily, defendant's characterization of his request for a continuance as a request for a "short" continuance is not supported by the record. Defendant did not indicate that he had already retained private counsel. Instead, defendant indicated he told Ojo, "I got counsel coming in." Ojo was also unaware of the identity of any new counsel, stating instead that defendant "indicated to me that he would prefer to have private counsel." Defendant never said he had retained counsel who needed only a short continuance. Instead, he made a vague reference to an intention to bring in private counsel. The trial court was not required to grant an indefinite continuance for defendant to obtain unspecified private counsel on the day scheduled for the evidentiary hearing.

Further, the only evidence in the record that counsel gave defendant the wrong date for the hearing are his statements in court. Defendant's comments were not confirmed by Ojo, and the trial court was not required to credit them. At the April 11, 2023 status conference, Ojo informed the court defendant would like to be present for the evidentiary hearing. The court stated, "We probably need two months [to get him here] so I would pick a day in June." At that time, the date for the evidentiary hearing was

15

set for June 15 at Ojo's request. The court responded, "We will order him out . . . from prison and we will do the OSC hearing on that date." There was never any question of the date of the hearing, and the court had no reason to believe Ojo was misinformed as to the date.

Defendant further argues the continuance was particularly important for defendant because Ojo did nothing to prepare for the hearing or advocate for defendant at the hearing. Defendant argues Ojo's "sole contribution at the hearing" was to "completely misstate the applicable law by telling the court that it 'needs to be satisfied that he acted with reckless disregard for human life.'" Defendant argues this criterion is only applicable in a felony-murder case. However, defendant effectively silenced Ojo by interrupting her after she asked to be heard. Under the circumstances, defendant cannot fault Ojo for articulating only one sentence. It is impossible to know what further arguments Ojo would have made or whether she would have corrected any purported error of law.

Finally, defendant argues the court's stated concern about delay was unreasonable. In response to Ojo's opening remark that defendant had indicated he wanted to have private counsel handle the case, the court responded, "The court finds that request untimely. This has been in this court for a number of years now and Ms. Ojo has thoroughly briefed this case and argued this case and submitted documents on this case. [Defendant] has been appointed counsel and he has adequate counsel, so the request is denied as untimely." Defendant disagrees with the court's statement that the matter had been in the court for a number of years. Defendant admits he filed his petition on June 13, 2019, but the remittitur following this court's reversal of the trial court's summary dismissal did not issue until

16

May 12, 2022.  Two status conferences had occurred in February and April 2023.  Thus, defendant argues, while the case had been in the court for a number of years, the evidentiary hearing had not been unreasonably delayed, and a short continuance would not have caused unreasonable delay.  Defendant insists his request was not a result of gamesmanship or lack of due diligence.

Defendant fails to consider the effort and resources expended by the prosecution and the trial court in preparing for the hearing.  There is a burden on the prosecution to prove, beyond a reasonable doubt, that the petitioner was convicted under a still viable theory.  Further, there is a public interest in the efficient administration of section 1172.6 hearings.  In addition, defendant exhibited a lack of due diligence.  He had informed counsel two months previously that he intended to get private counsel, but failed to inform the court of new counsel and failed to hire such counsel, who could have easily determined the correct date of the hearing regardless of defendant's understanding.

*People v. Trapps* (1984) 158 Cal.App.3d 265, cited by defendant in support of this argument, is distinguishable.  In *Trapps*, the defendant sought a continuance of his sentencing hearing to retain counsel.  Thus, the matter did not concern a petition for resentencing, which is an act of lenity.  (*People v. Anthony, supra*, 32 Cal.App.5th at p. 1156.)  At the original sentencing hearing, Trapps had been sent out for a diagnostic study.  Upon his return to court, counsel informed the court Trapps wanted a continuance to retain a different lawyer.  Trapps indicated to the court there was a conflict of interest between him and his attorney.  (*Trapps*, at p. 270.)  In reversing the trial court's denial of Trapps's request for a continuance to

17

obtain new counsel, the *Trapps* court stated, "A reasonable continuance would not have disrupted the orderly administration of justice. This was a sentencing, not a trial. The sentencing which took place was not a lengthy proceeding and no witnesses were called." (*Id.* at p. 271.) Further, Trapps was not dilatory as he "had just returned from the [diagnostic] study" and made his request right away. (*Id.* at p. 272.)

Here, in contrast, the parties appeared for an evidentiary hearing. The court, and presumably the prosecution, had invested time preparing. Defendant had notified his counsel two months earlier he intended to obtain private counsel, but failed to either inform the court or to obtain such counsel. Defendant failed to provide any information suggesting new counsel had drafted any briefing, intended to submit new evidence or even intended to appear. Under the circumstances, the trial court did not abuse its discretion in declining to permit defendant an indeterminate continuance on the day of the hearing. (*People v. Blake* (1980) 105 Cal.App.3d 619, 623–624 ["a defendant who desires to retain his own counsel is required to act with diligence and may not demand a continuance if he is unjustifiably dilatory or if he arbitrarily desires to substitute counsel at the time of the trial"].)

We further note that, even if there had been error, defendant cannot demonstrate that, but for the error, it is reasonably probable he would have obtained a more favorable result. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Vance* (2023) 94 Cal.App.5th 706, 714.) As the trial court indicated, the evidence that appellant aided and abetted the murder with knowledge and intent was overwhelming, and there

18

is no indication of any new rebuttal arguments or evidence a new attorney could have used.[7]

## IV. Constitutional claims

Defendant advances claims under both the Sixth Amendment and Fourteenth Amendment, arguing the trial court violated these rights by ruling his request to replace counsel was untimely.

### A. *Sixth Amendment*

Defendant argues he had a Sixth Amendment right to be assisted by counsel of his choice. Under a Sixth Amendment analysis, defendant need not show prejudice from his deprivation of counsel of his choice. (*U.S. v. Gonzalez-Lopez* (2006) 548 U.S. 140, 148 ["Where the right to be assisted by counsel of one's choice is wrongly denied, . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation."].) Defendant cites *People v. Foley* (2023)

---

[7] "'[U]nder direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another [e.g., murder] if the accomplice aids the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends."'" (*People v. Curiel* (2023) 15 Cal.5th 433, 463.) The evidence showed that defendant called John after Contreras injured defendant and their father, Miguel. Defendant called John "to have this fool hit" and to tell him "this fool needs to go down." John agreed. Both defendant and John went to Contreras's house, where defendant wielded a steel pipe. Defendant made threats indicating Contreras and his companions were "going to pay." After this last threat, John appeared and shot Contreras. Thus, as the trial court indicated, there was overwhelming evidence defendant was an aider and abettor who actually possessed the intent to kill.

19

97 Cal.App.5th 653, 659–660 (*Foley*) and *Rouse, supra*, 245 Cal.App.4th 292, in support of his position that he had a Sixth Amendment right to counsel at the evidentiary hearing.

We follow the majority of case authority in declining to find defendant had a Sixth Amendment right to counsel in his resentencing hearing. (See *Lewis, supra*, 11 Cal.5th at p. 972 ["There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction."]; *People v. Silva* (2021) 72 Cal.App.5th 505, 520 ["'The retroactive relief provided by section 1170.95 reflects an act of lenity by the Legislature "that does not implicate defendants' Sixth Amendment rights."'"]; *People v. James* (2021) 63 Cal.App.5th 604, 609 [same]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 674 ["legislation 'intended to give inmates serving otherwise final sentences the benefit of ameliorative changes to applicable sentencing laws . . .' . . . does not implicate the Sixth Amendment"].) To the extent *Foley* and *Rouse* state otherwise, we disagree.[8]

Further, we note that regardless of the constitutional analysis, defendant is not entitled to a continuance to retain counsel of his choice if "bestowal of that benefit" would "unreasonably disrupt the orderly administration of justice." (*People v. Haskett* (1982) 30 Cal.3d 841, 852.) The trial court did not abuse its discretion in determining that such a disruption was unreasonable on the day of the evidentiary hearing.

---

[8] We acknowledge *People v. Grajeda* (2025) 111 Cal.App.5th 829, 837–838, issued by Division Seven of this district, which cites *Rouse* and *Foley* for the proposition that a criminal defendant has a Sixth Amendment right to counsel at a resentencing hearing. We respectfully disagree.

20

**B.** *Due process*

A due process right to counsel applies after issuance of an order to show cause. (*Lewis, supra*, 11 Cal.5th at p. 973; *Foley, supra*, 97 Cal.App.5th at pp. 659–660.) However, as set forth above in detail, due process is flexible and calls for a balancing of the interests at stake. (*Delgadillo, supra*, 14 Cal.5th at p. 229.) While defendant had an interest in selecting his own attorney, he had an attorney present who was advocating for his interests. Defendant failed to notify the court in advance of the hearing that he intended to obtain private counsel and failed to request a continuance for that purpose. The court was not required to grant defendant's last minute request, on the morning of the evidentiary hearing, to continue the hearing so defendant could obtain new counsel.

A court should not interfere with a defendant's right to be represented by counsel of his choice "unless to accommodate him would result in a disruption of the ordinary process of justice to an unreasonable degree." (*People v. Trapps, supra*, 158 Cal.App.3d at p. 271.) The trial court did not err by finding defendant's last-minute request unreasonable under the circumstances of this case.

**V.    Lack of representation/ineffective assistance**

Defendant advances two ineffective assistance of counsel claims. He first contends he was completely deprived of counsel because of Ojo's failure to prepare for the evidentiary hearing or advocate on his behalf at the hearing. Alternatively, defendant contends even if Ojo represented him, her representation was prejudicially defective under *Strickland v. Washington* (1984) 466 U.S. 668, 688 (*Strickland*).) As set forth below, we reject defendant's claims.

21

### A. *Applicable law*

"[T]he adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of an advocate.'" (*United States v. Cronic, supra*, 466 U.S. at p. 656.) "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." (*Ibid.*) Under the standard set forth in *Cronic,* no showing of prejudice is required. (*Id.* at p. 659; *Bell v. Cone* (2002) 535 U.S. 685, 696.) As noted, section 1172.6 does not implicate defendant's Sixth Amendment rights. Thus, defendant's claim that he was totally denied counsel within the meaning of *Cronic*, and that he is entitled to automatic reversal, are misplaced.[9]

However, defendant had a due process right to effective assistance of counsel at the evidentiary hearing. (*Foley, supra*, 97 Cal.App.5th at pp. 659–660.) "The standard for showing ineffective assistance of counsel is well settled. 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.'" (*People v. Gray* (2005) 37 Cal.4th 168, 206–207.)

Claims of ineffective assistance of counsel are subject to a harmless error analysis. (*Strickland, supra*, 466 U.S. at p. 695.) "In making this determination, a court hearing an ineffectiveness

---

[9]     *King v. Superior Court* (2003) 107 Cal.App.4th 929 involved pretrial proceedings, thus it is distinguishable from the present matter.

22

claim must consider the totality of the evidence before the judge or jury." (*Ibid.*) "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." (*Id.* at p. 697.) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Ibid.*)

### B. *Complete lack of representation*

Although the standard under *Cronic* is inapplicable, we briefly address defendant's argument he suffered a complete lack of representation. Defendant argues Ojo knew at least two months before the hearing that he wanted to replace her with private counsel. However, defendant argues, until such time as she was replaced, Ojo had a Sixth Amendment duty to advocate on his behalf, including to advocate for his constitutional right to counsel of his choosing. Defendant claims Ojo failed to effectively advocate for his right to counsel of his choosing and failed to argue the right should be respected short of unreasonable disruption of the court process. Defendant argues Ojo should have pointed out the court was mistaken that the matter was thoroughly briefed and should have explained she gave Ramirez the wrong date for the hearing.

The record shows Ojo did advocate for defendant. The trial court indicated the matter was thoroughly briefed.[10] About two months before the hearing, defendant spoke with Ojo and told her not to do anything on the case, as he intended to obtain private

---

[10]    As noted above, the briefs or motions filed in February 2023 are not in the record on appeal, nor could the trial court locate them.

counsel.[11] Ojo informed the court defendant wanted to be present in court for the hearing and had him ordered to court. In addition, at the time of the hearing, Ojo immediately communicated defendant's desire to be represented by private counsel. Following the court's determination that defendant was liable for murder as a direct aider and abettor who possessed the intent to kill, Ojo asked to be heard. She informed the court it must be satisfied defendant had acted with reckless disregard for human life. At that point, she was interrupted by defendant who apparently prevented her from completing her argument. As to defendant's insistence that Ojo provided him with the wrong date for the hearing, there is no indication defendant intended to notify the court or substitute counsel in the next five days. Thus, defendant cannot articulate any detriment from this alleged error on Ojo's part.

## C. *Ineffective assistance under* Strickland

To establish ineffective assistance of counsel under *Strickland*, defendant must show Ojo's performance fell below an objective standard of reasonableness. (*Strickland, supra*, 466 U.S. at p. 688.) Ojo's performance did not fall below this standard. Defendant cannot fault Ojo with respect to her failure to address defendant's right to retained counsel. At the hearing,

---

[11] Defendant may not fault Ojo for failing to submit any motions or evidence to the trial court after he told her to do nothing. "[A] defendant who insists that mitigating evidence not be presented . . . is estopped from later claiming ineffective assistance based on counsel's acquiescence in his wishes." (*People v. Deere* (1991) 53 Cal.3d 705, 717 (*Deere*).) The invited error doctrine estops such a defendant from claiming ineffective assistance of counsel "based on counsel's acts or omissions in conformance with the defendant's own requests.'" (*Ibid.*)

Ojo twice informed the trial court of defendant's desire to obtain private counsel. Defendant had failed to name any such counsel or attempt to substitute in any such counsel, therefore Ojo could only request a continuance to give defendant the opportunity to find such counsel. Defendant admits the court understood Ojo was requesting a continuance on his behalf. The court denied the request as untimely, therefore there was no reason for Ojo to detail defendant's right to counsel.

Defendant faults Ojo for failing to submit written arguments in support of his petition. According to the court, she did file a written motion or motions in support of defendant's petition in February 2023, although such motions are not in the record. After that time, defendant instructed her not to do anything further. Defendant's claim that she should have done more is foreclosed. (*Deere, supra*, 53 Cal.3d at p. 717.)

Similarly, defendant's claim that Ojo was unprepared for the hearing is foreclosed. (*Deere, supra*, 53 Cal.3d at p. 717.) Based on defendant's representations, Ojo was led to believe she would not be representing defendant at the hearing. Despite this, she appeared and argued for a continuance. She attempted to make a substantive argument on defendant's behalf, but was interrupted by defendant and was not able to complete her argument. Defendant made it clear by his words and actions that he did not want Ojo to make any arguments, so he cannot now be heard to complain that she failed to do so.[12]

---

[12] We decline to credit defendant's protests that Ojo stated the wrong standard to the trial court. Defendant interjected and did not allow her to speak, so it is impossible to know how her argument would have progressed.

25

Finally, defendant cannot show prejudice, as required by *Strickland*. As the trial court found, the evidence was "far beyond a reasonable doubt based upon the evidence presented at trial" that defendant was guilty of murder under a still valid theory of aiding and abetting murder with intent to kill. As set forth above, there was ample evidence defendant had a motive to aid and abet the murder with intent to kill. Defendant's reference to speculative new evidence does not fulfill his obligation to show prejudice. "[T]o be entitled to reversal of a judgment on grounds that counsel did not provide constitutionally adequate assistance, the petitioner must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel.'" (*People v. Williams* (1988) 44 Cal.3d 883, 937.)

Defendant has failed to show Ojo's performance fell below an objectively reasonable standard, and he has failed to show prejudice.

## DISPOSITION

The order is affirmed.


CHAVEZ, J.

We concur:


LUI, P. J.


ASHMANN-GERST, J.

26